IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:10-CV-28-FL

| | | |
|---|---|---|
| KEITH OTIS DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD MOSLEY, Officer, Rocky | ) | ORDER |
| Mount Police Department, individually and | ) | |
| in his official capacity; and CITY OF | ) | |
| ROCKY MOUNT, NORTH CAROLINA, | ) | |
| ROCKY MOUNT POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (DE # 30). Plaintiff timely responded in opposition, and no reply was filed. In this posture, the issues raised are ripe for adjudication. For the reasons that follow, defendants' motion is granted.

### STATEMENT OF THE CASE

On March 11, 2010, plaintiff filed complaint in this court, alleging constitutional claims under 42 U.S.C. § 1983 as well as state common law claims for assault, battery, negligence, false imprisonment, and intentional infliction of emotional distress. Plaintiff seeks to hold defendant Donald Moseley ("Moseley"),[1] an officer with the Rocky Mount Police Department (the "RMPD"),

---

[1] Moseley's surname is incorrectly spelled "Mosley" in the complaint. Although no party has asked to correct the caption in this case, the court will refer to this defendant as "Moseley" throughout this order.

liable for injuries plaintiff sustained when plaintiff was shot by Mosley during the service of a search warrant. The City of Rocky Mount, North Carolina (the "City"), as Moseley's employer and the entity responsible for the Department, was also named as a defendant. Plaintiff seeks to hold the City liable under theories of *respondeat superior* and failure to train.

On April 15, 2011, following the close of discovery, defendants filed this motion seeking summary judgment on each of plaintiff's claims. With respect to the state law claims, defendants assert public officer's immunity and governmental immunity. They also seek qualified immunity on the § 1983 claim and contend that the evidence is insufficient to support the state law intentional tort claims. Plaintiff timely responded in opposition, arguing that defendants are not entitled to immunity on the facts presented here.

## STATEMENT OF THE UNDISPUTED FACTS

The court views the facts in the light most favorable to plaintiff as the non-moving party, drawing all reasonable inferences in that party's favor. See Scott v. Harris, 550 U.S. 372, 378 (2007). The undisputed facts, viewed in that light, are set forth below. Additional facts are provided in the court's analysis, as needed.

On March 13, 2007, officers with the RMPD executed a search warrant at 516 Coleman Avenue, a small one-story house located within the City. Moseley, a member of the RMPD's Special Response and Tactics Team ("SRT"), was one such officer, and was tasked with driving the team to the address. Moseley was also responsible for any "secondary breach," meaning that Moseley would have forced entry into the residence using a sledgehammer if the door had been fortified. It does not appear that the door was fortified, however, and officers were able to gain entry without the sledgehammer. Moseley was the fourth or fifth officer to enter the residence.

Moseley and the other officers anticipated that plaintiff and his brothers would be present at the Coleman Avenue residence at the time of the search. Plaintiff was known to Moseley, as he was suspected of selling narcotics at the location, and his family was suspected by Moseley of being a "violent drug organization." Moseley had previously arrested two of plaintiff's brothers, and had been involved in the investigation of two homicides that occurred at a residence associated with plaintiff.

When Moseley entered the Coleman Avenue residence, he saw two unidentified females sitting on the couch to his right, and ordered them to get on the floor. He then proceeded to the kitchen, where he noticed a person standing at the stove. Moseley ordered that individual to move to the floor as well. He then saw a group of people come attempting to escape out of the back door. Those individuals were stopped by other officers and also ordered to the floor.

As he was progressing through the residence, Moseley kept his firearm (a handgun) in the "low ready" or "weapon retention" position, meaning that he held it approximately chest high, oriented between his feet. Moseley's finger was "indexed," meaning it was on the side-edge of the trigger guard. He was wearing a ballistic SRT vest, with various utility pockets to store additional ammunition and other effects.

As Moseley was attempting to assist other officers with the crowd of individuals fleeing toward the backdoor, an individual referred to as "Mr. Brown" became noncompliant. Brown was on his back but attempting to "swim" into a different room away from the officers. Moseley crouched down and grabbed Brown's leg with his left hand to force him to stay still. Plaintiff, who had been among those attempting to flee, was lying on the ground somewhere in front of Moseley on the other side of Brown.

3

In his deposition testimony, Moseley stated that he attempted to return his firearm to his holster after securing Brown, but felt it shift as he attempted to do so. Believing that the weapon would fall out of the holster, Moseley grabbed the firearm again and pulled it to his side. As Moseley continued to struggle with Brown, the firearm became caught on something on his vest (possibly the handle of a hand mirror in his utility pocket), and discharged. The bullet struck plaintiff in the buttock, and he yelled that he had been hit. Moseley stated that he did not intentionally aim the firearm at plaintiff and that the discharge was accidental.

In his own deposition testimony, plaintiff states that an officer (not Moseley) pointed his gun at plaintiff and directed him to get down. Plaintiff complied, and while he was on the ground, he was shot in the buttock by Moseley. Afterwards, yet another officer turned plaintiff over onto his back and began searching him. Plaintiff was not handcuffed at that time. An officer offered medical assistance, but plaintiff refused. Plaintiff stated that he did not see Moseley during the events in question, and was unaware why he was shot or how the shooting unfolded.

Finally, plaintiff has submitted part of the deposition testimony of Jarrod B. Edmonds ("Edmonds"), another officer present during the search. Edmonds stated that he saw Moseley with his weapon out, although he could not say whether it was extended or whether it was pointed at anybody. He turned away, and almost immediately heard a gunshot. He turned back and saw Moseley still in possession of the firearm. According to Edmonds, Moseley was "drawing down on a black male who was laying on the floor in the fetal position." Edmonds then stepped forward, also pointing his gun at plaintiff to cover Moseley, and both he and Moseley ordered plaintiff to show them his hands. At that point in time, Edmonds had not yet identified plaintiff and did not know that Moseley had been the one to discharge his gun.

4

## DISCUSSION

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).[2]

B. Analysis

The court begins its analysis with an observation: Notwithstanding plaintiff's conclusory allegations of intentional misconduct by Moseley, the undisputed summary judgment evidence before the court is sufficient only to demonstrate that Moseley accidentally discharged his weapon. No witness testified to seeing Moseley aim his weapon at plaintiff and pull the trigger. Nor has plaintiff presented any evidence that Moseley had a motive to shoot him or that Moseley had a history of such incidents. Although the court must view the evidence in the light most favorable to the non-moving party, plaintiff here has put forward no evidence supporting his allegations of

---

[2] In meeting their respective burdens, the parties must cite to particular parts of materials in the record, or show that the materials do not establish the absence or presence of a genuine dispute, or show that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1).

intentional conduct. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts"). In short, plaintiff has failed to demonstrate a genuine issue as to whether the shooting was intentional, because he has not put forward sufficient evidence for a reasonable jury to find in his favor on that issue. See Anderson, 477 U.S. at 248.

As the court discusses in more detail below, the failure of plaintiff to raise a genuine issue as to the Moseley's intent dooms each of plaintiff's claims against that officer. His § 1983 and intentional tort claims cannot be premised upon mere negligence, which is the most that the evidence shows. And his state law negligence claims cannot proceed against Moseley because public officer's immunity protects him absent any evidence of corrupt or malicious conduct. Finally, plaintiff's claims against the City fail because it is entitled to governmental immunity and because plaintiff has failed to establish any claim against its employee, Moseley.

1. § 1983 Claim

To establish a federal civil rights claim under § 1983, plaintiff must establish two essential elements: (1) that one or more of his rights secured by the Constitution and laws of the United States was violated; and (2) that the alleged deprivation was committed by a person acting under color of state law. Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011). In his complaint, plaintiff identifies three constitutional rights allegedly violated by Moseley's conduct: (1) the Fourth Amendment right to be secure from unreasonable seizures; (2) the Fifth Amendment right to due process; and (3) the Eighth Amendment right to be free from cruel and unusual punishment.

As noted, Moseley asserts a qualified immunity defense. Government officials are entitled to immunity from civil damages in suits under § 1983 so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 816 (2009). The court has discretion to address either of these prongs first. Id. at 821. As set forth below, the court has limited itself to the first inquiry, and finds no constitutional violation on the facts before it.

a. Fourth Amendment

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement." Brendlin v. California, 551 U.S. 249, 254 (2007) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). But a "seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . ." Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989). Instead, an individual is "seized" under the Fourth Amendment "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" Id. at 597 (emphasis in original). In this case, because Moseley's firearm accidentally discharged, plaintiff was not seized for purposes of the Fourth Amendment. Morever, because plaintiff had already submitted to police authority, and was therefore already "seized," Moseley's actions did not constitute the relevant "seizure" for Fourth Amendment purposes. See, e.g., Schultz v. Braga, 455 F.3d 470, 481 (4th Cir. 2006).

7

b. Fifth Amendment

Plaintiff's Fifth Amendment claim, as briefed by the parties, appears to arise under substantive due process. To state such a claim, he must show that Moseley's conduct "shocks the conscience." See Temkin v. Frederick County Comm'rs, 945 F.2d 716, 719 (4th Cir. 1991). Something more than mere negligence is required to make this showing. Id. Instead, plaintiff must demonstrate that the officer's conduct was "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Hartford County, Md., 946 F.2d 278, 281 (4th Cir. 1991). An accidental shooting such as the one that occurred here does not meet this high standard. See id. at 282.

c. Eighth Amendment

The Eighth Amendment applies only after the state has secured a formal adjudication of guilt in accordance with due process of law. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). As such, the Eighth Amendment has no application to plaintiff's cause of action. Indeed, plaintiff does not even mention his Eighth Amendment claim in his response in opposition. Accordingly, the court is compelled to conclude that there was no Eighth Amendment violation in the circumstances presented here.[3]

---

[3] The court notes that the Due Process Clause of the Fourteenth Amendment grants *pretrial detainees* with even greater protections than the Eighth Amendment: they are entitled to be free from *any* form of punishment. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 250 (4th Cir. 2005). However, plaintiff has submitted no legal authority applying the Due Process Clause in this context to arrestees or criminal suspects, who are protected by the Fourth Amendment. In any case, an action is "punishment" only if it is "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective." Id. at 251. Here, the accidental shooting was not "punishment" of any kind.

8

d.  Claims Against the City

Because Moseley did not violate any of plaintiff's constitutional rights, he is entitled to qualified immunity. Similarly, to the extent plaintiff's § 1983 claim extends to the City, this entity cannot be held liable absent an underlying constitutional violation by Moseley. See Young v. City of Mount Ranier, 238 F.3d 567, 579 (4th Cir.2001) ("[A] section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."). Accordingly, the City is also entitled to summary judgment on plaintiff's § 1983 claim.

2.  State Law Claims Against Moseley

a.  Assault and Battery

"An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." Dickens v. Puryear, 302 N.C. 437, 444, 276 S.E.2d 325, 330 (1981). The former requires "[a]n overt act or an attempt . . . to do some immediate physical injury to the person of another," while the latter requires "intentional and unpermitted contact with one's person." Id. at 444-45, 276 S.E.2d at 330-31 (internal quotation marks omitted). In the context of police action, a plaintiff alleging assault or battery must show that the officer used force which was excessive under the circumstances. See Glenn-Robinson v. Acker, 140 N.C. App. 606, 625, 538 S.E.2d 601, 615 (2000).

As already discussed, Moseley did not threaten to shoot plaintiff, nor did he intend to shoot him when his weapon accidentally discharged. Indeed, plaintiff's assault claim is particularly dubious where he stated in his deposition that he never saw Moseley on the night in question, and did not see the shot being fired. And given the unintentional nature of Moseley's contact with

9

plaintiff, his battery claim is equally unavailing. On the undisputed facts before it, the court concludes that plaintiff has not shown any assault or battery.

b. False Imprisonment

"False imprisonment is the illegal restraint of the person of any one against his or her will." Rogers v. T.J.X. Cos., Inc., 329 N.C. 226, 229, 404 S.E.2d 664, 666 (1991). "Involuntary restraint and its unlawfulness are the two essential elements of the offense." Black v. Clark's Greensboro, Inc., 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964). Where a plaintiff is detained pursuant to a lawful warrant based upon probable cause, his detention itself cannot form the basis of a false imprisonment claim. See Williams v. City of Jacksonville Police Dep't, 165 N.C. App. 587, 596, 599 S.E.2d 422, 430 (2004) ("Probable cause is an absolute bar to a claim for false arrest.").

Plaintiff does not defend his false imprisonment claim in his response in opposition. Nor does he attack the validity of the search warrant for the Coleman Avenue residence. And to the extent that plaintiff would argue that his shooting made the detention unlawful, the court has already noted on multiple occasions that the evidence shows that shooting to have been accidental and not, therefore, unlawful. As such, plaintiff's false imprisonment claim fails.

c. Intentional Infliction of Emotional Distress

An intentional infliction of emotional distress claim requires a showing of (1) extreme and outrageous conduct by defendant (2) which is intended to and does in fact cause (3) severe emotional distress. Holloway v. Wachovia Bank & Trust Co., 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994). "'Extreme and outrageous' conduct is shown by conduct which shocks the conscience or exceeds all bounds of decency tolerated by society." Russ v. Causey, 732 F. Supp. 2d 589, 607 (E.D.N.C.

10

Case 4:10-cv-00028-FL  Document 34  Filed 06/16/11  Page 10 of 13

2010). "The conduct must be so outrageous in character, and so extreme in degree, to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

As with his false imprisonment claim, plaintiff does not defend his intentional infliction of emotional distress claim. Moseley's conduct – which amounts to nothing more than an accidental shooting – was not intentional, nor was it so "extreme and outrageous" as to shock the conscience or exceed all bounds of decency tolerated by society. Accordingly, plaintiff's intentional infliction of emotional distress claim also fails as a matter of law.

d. Negligence

Unlike his intentional tort claims, plaintiff may be able to establish that Moseley was negligent in shooting him. A negligence claim requires a showing of (1) the existence of a legal duty or standard of care owed to plaintiff by defendant, (2) breach of that duty, (3) that the breach was the proximate cause of plaintiff's injury, and (4) that damages resulted from that injury. Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). But although plaintiff may be able to meet each of these requirements, his claim nevertheless fails because Moseley has asserted the defense of public officer's immunity.

Under the doctrine of public officer's immunity, a public officer such as Moseley "cannot be held individually liable for damages caused by mere negligence in the performance of [his] governmental or discretionary duties." Meyer v. Walls, 347 N.C. 97, 112, 489 S.E.2d 880, 889 (1997). Instead, plaintiff must show that the officer acted with malice by "do[ing] that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial and injurious to another." Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). As such, even if Moseley was negligent, he may not be held liable under state law.

11

### 3. State Law Claims Against the City

Plaintiff's state law claims against the City also fail on immunity grounds.[4] Under the doctrine of governmental immunity, a municipality may not be held liable for the actions of its employees arising out of the exercise of governmental functions, absent waiver of immunity. Meyer v. Walls, 347 N.C. 97, 104. 489 S.E.2d 880, 884 (1997); see also Guthrie v. N.C. State Ports Auth., 307 N.C. 522, 533, 299 S.E.2d 618, 624 (1983). Pursuant to state law, the City may "waive its immunity from civil liability in tort by the act of purchasing liability insurance." N.C. Gen. Stat. § 160A-485(a); see also Evans v. Hous. Auth. of City of Raleigh, 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004) (noting that a city waives immunity "only to the extent of the insurance obtained").

Under North Carolina law, the provision of police services is a governmental function for which governmental immunity is available. See Alexander v. City of Greensboro, --- F. Supp. 2d ----, 2011 WL 94538, at *35 (M.D.N.C. 2011); Coleman v. Cooper, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5 (1988). As such, the City is not liable for the acts of Moseley arising out of the performance of his law enforcement duties absent purchase of liability insurance. Plaintiff did not allege any purchase of liability insurance in his complaint, and the summary judgment evidence before the court does not include any insurance policy. Accordingly, the City is entitled to summary judgment on the issue of governmental immunity.

## CONCLUSION

For the reasons set forth above, the court concludes that Moseley is entitled to qualified immunity and public officer's immunity, that the City is entitled to governmental immunity, and that

---

[4] Plaintiff's claim against Moseley in his official capacity is treated as a claim against the City for purposes of the court's governmental immunity analysis. See Kephart ex rel. Tutwiler v. Pendergraph, 131 N.C.App. 559, 563, 507 S.E.2d 915. 918 (1998) (citing Whitaker v. Clark, 109 N.C. App. 379, 381-82, 427 S.E.2d 142, 143-44 (1993)).

12

plaintiff has failed to put forward evidence substantiating his § 1983 or intentional tort claims. Accordingly, defendants' motion for summary judgment (DE # 30) is GRANTED. The Clerk is directed to enter judgment.

SO ORDERED, this the 15th day of June, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge